UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

RECEIVED
JUN 21 2022
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY_____

RAFAEL DANIEL
DE LA CRUZ JIMENEZ, #56269-004          PLAINTIFF

V.      CASE NO. 21-CV-04053 Section P
Judge Cain, Magistrate Kay

UNITED STATES OF AMERICA          DEFENDANT

PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

Comes now Plaintiff Rafael Daniel de la Cruz Jimenez, (Plaintiff) and for his verified first amended complaint states:

PARTIES, JURISDICTION, VENUE

1. Plaintiff is a federal prisoner of the name and inmate number set forth above, in the custody of the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP) at FCI Oakdale-1, city of Oakdale, Louisiana.

2. The acts and omissions complained of herein occurred primarily in the Western District of Louisiana, at the aforesaid prison.

3. The Federal Tort Claims Act (FTCA) 28 USC 2671 et. seq., authorizes suit as to the FTCA claims herein.

4. Plaintiff submitted an FTCA tort claim, a copy of which is attached hereto as Exhibit "1". All exhibits to this complaint are incorporated herein as if set forth word for word.

5. The tort claim attachment is attached hereto as Exhibit "2."

1

6. Since the copy quality of the actual signed tort claim is pathetic, Plaintiff attaches the text of the attachment hereto as Exhibit "3."

7. Plaintiff attaches the medical record release and request for medical records, attached to his tort claim, as Exhibit "4."

8. Plaintiff received an acknowledgement of receipt dated July 20, 2017, a copy of which is attached hereto as Exhibit "5."

9. On October 13, 2017, Plaintiff sent a 3 page letter to Jason Sickler, South Central Regional Office (SCRO) Regional Counsel Jason Sickler. Jason Sickler responded with a letter dated November 9, 2017, saying that a response would be sent by May 2, 2018. Exhibit "6."

10. Whether or not a "right to sue letter" was sent, the claim is now ripe for litigation.

11. The US District Court for the Western District of Louisiana has jurisdiction and venue over FTCA claims arising out of acts and omissions at FCI Oakdale-1.

COUNT 1 – NEGLIGENCE IN THE PROVISION OF MEDICAL CARE

12. On or about February 24, 2017, Plaintiff began to suffer severe headache, blurred vision, dizziness, high fever, general malaise, weakness in the extremities, and loss of appetite.

13. On or about February 24, 2017, Plaintiff verbally reported these symptoms to medical staff at FCI Oakdale-1 and requested medical assistance.

14. On or about March 7, 2017, Plaintiff verbally reported his symptoms and requested medical assistance to security officers Lieutenant Gotreau, Lieutenant Wills, and the Acting Assistant Captain and Captain Benjamin J. Bermingham.

15. On or about March 31, 2017 Medical Staff at FCI Oakdale-1 checked Plaintiff's blood pressure and temperature.

16. Plaintiff was accused of faking illness, and ordered to leave and not to return to Medical.

17. Between February 24, 2017 and April 26, 2017 Plaintiff's symptoms increased to include the inability to stand, sit up without assistance, severe constipation, vomiting, severe abdominal pain, weight loss, and inability to eat or drink without vomiting.

18. Plaintiff and other inmates repeatedly reported these symptoms to appropriate BOP personnel, verbally and in writing. These requests for medical assistance were made at least 20 times, between February 24, and April 26, 2017.

19. Between February 24, 2017 and April 25, 2017, Plaintiff was repeatedly denied medical attention by the appropriate personnel at FCI Oakdale-1.

20. On April 26, 2017, Plaintiff collapsed at FCI Oakdale-1 dining hall.

21. After Plaintiff collapsed on April 26, 2017, medical staff declared a medical emergency and transported Plaintiff to Oakdale Community Hospital emergency room by ambulance.

22. Immediately prior to Plaintiff's transport by ambulance to the hospital, while at FCI Oakdale-1 medical unit, Plaintiff had an involuntary urge to vomit/spit fluid.

Officer R. CATOIRE "Rocky" forcefully covered Plaintiff's mouth to prevent Plaintiff from vomiting/spitting up the fluid. Officer R. CATOIRE then smeared the liquid in Plaintiff's face and ordered him not to vomit/spit up on his floor.

23. Plaintiff arrived at Oakdale Community Hospital and underwent a series of tests. He was diagnosed with constipation and returned to FCI Oakdale-1 the same evening.

24. On or about April 26, 2017, Plaintiff was returned to FCI Oakdale-1, and placed in Rapides 1 unit, Room 225. Plaintiff's condition continued to deteriorate.

25. Plaintiff made several requests for medical assistance from April 27, 2017 through May 09, 2017.

26. Medical staff checked Plaintiff's vital signs and yet again accused Plaintiff of faking illness.

27. Plaintiff was threatened with being placed in SHU (Special Housing Unit, or jail for the prison) if Plaintiff continued to complain.

28. Plaintiff's condition continued to deteriorate. On May 9, 2017, four inmates carried Petitioner to the chow hall staff at FCI Oakdale-1, to explain to the Warden that Plaintiff was in dire need of medical attention. The Warden directed them to take Plaintiff to the Medical Department.

29. When Plaintiff arrived at Medical, the staff threatened to lock him up in the SHU for faking illness. After further examination the Medical staff realized Plaintiff was gravely ill and need emergency medical care. Plaintiff was taken to Oakdale Community Hospital on May 9, 2017.

30. On May 9, 2017 Medical staff at Oakdale Community Hospital examined and ran tests on Plaintiff and determined Petitioner was suffering as a result of a brain tumor.

31. Plaintiff was transported by ambulance to Rapides Regional Medical Center on May 9, 2017, to undergo emergency surgery to remove the brain tumor.

32. Plaintiff underwent emergency surgery at Rapides Regional Medical Center on May 9, 2017.

33. Plaintiff was released from Rapides Regional Medical Center on May 15, 2017, and returned to FCI Oakdale-1.

34. On arrival at FCI Oakdale-1 Plaintiff was placed in the SHU, in unsanitary conditions altogether incompatible with healthy recovery.

35. On the morning of May 19, 2017, Plaintiff noticed that his bed was soaked with fluid from his head.

36. The incision from the brain tumor surgery had begun to leak Cerebral Spinal Fluid (CSF). The sheet at head area of the Plaintiff's bed was soaked with CSF.

37. Plaintiff reported the leaking CSF fluid to officers in SHU on May 19, 2017.

38. A nurse from FCI Oakdale-1 medical department came to the SHU in the evening of May 19, 2017 and examined Plaintiff. She reported the leaking CSF to nurse Mary Thomas at FCI Oakdale-1 Medical Department.

39. Mary Thomas advised the nurse to keep an eye on it but offered no medical aid at the time. There was no other medical attention until May 24, 2017.

40. The incision from the surgery began to leak more fluid. Plaintiff pleaded for help between May 19, 2017 to May 31, 2017.

41. Plaintiff was denied desperately needed medical care during this period of time.

42. Plaintiff was terrified for his life during this time and could not get any assistance.

43. On May 31, 2017 Plaintiff returned to Dr. Dowd to have the sutures from the surgery removed. Dr. Dowd was alarmed when he noticed the leaking CSF Fluid and performed emergency surgery to stop the leaking CSF fluid on June 1, 2017.

44. Plaintiff remained at Rapides Regional Hospital Medical Center in recovery from June 1, 2017 until June 3, 2017.

45. While Plaintiff was recovering from the anesthesia administered during surgery, he had bad dreams and cried out in his sleep. As he awoke from the dream the security officer in the room began to curse and physically threaten Plaintiff because he woke the officer from sleep. The officer placed his hand on his pistol and threatened Plaintiff with physical violence if he woke him again. Plaintiff was disoriented, confused, and even more terrified for his safety.

46. Plaintiff was returned to FCI Oakdale-1 on June 3, 2017 and placed in the SHU, in unsanitary conditions altogether unsuited for recovery from surgery.

47. On or about August 29, 2017 Plaintiff notified Oakdale Medical Staff member Mary Thomas about ongoing symptoms after brain surgery. To date Oakdale

Medical Staff has only prescribed Tylenol to Plaintiff for ongoing symptoms such as periodic involuntary shaking of the left arm and left leg, and visual impairment.

48. On or about February 21, 2019 Plaintiff informed FCI Oakdale-1 Medical Staff that he was experiencing ongoing symptoms post operative including:

A. Severe headaches.

B. Eye Blurred Vision in the right eye.

C. Involuntary shaking of the legs.

D. Imbalance.

E. Dizziness. vertigo.

F. Left arm shaking periodically.

G. Swelling of head at temple.

H. Shortness of breath.

I. Accelerated heartbeat.

J. Numbness in Arms. periodically.

K. Numbness and tenderness on left rear side of head.

L. Weakness of extremities.

49. Pursuant to DOJ-FBOP Program Statement (P.S.) 6013.01, Plaintiff has a right to access health service at FCI Oakdale-1.

50. Pursuant to P.S. 6013.01 Plaintiff has the right to report complaints of pain to the health care provider and have pain assessed and managed in a timely and medically acceptable manner.

51. Pursuant to P.S. 3420.11, employees at FCI Oakdale-1 may not use any force beyond what is reasonably necessary to subdue an inmate.

52. Pursuant to P.S. 3420.11, employees at FCI Oakdale-1 may not use profane, obscene or abusive language when communicating with inmates.

53. As a direct and proximate result of the acts and omissions complained of herein, Plaintiff suffers blurred vision, impaired motor skills, periodic uncontrollable shaking of the extremities, memory problems, attention deficit disorder (ADD), periodic shortness of breath, difficulty with reading comprehension and general decline in quality of life.

54. Plaintiff's former profession as a commercial pilot is probably now impossible, due to the damage to Plaintiff's body, overall health, etc.

55. Prior to this episode Plaintiff was in good health and physical condition. Plaintiff exercised and ran about five days each week. Since the incident Plaintiff has been unable to resume an exercise and running routine and is in a much worse overall state of health.

56. The acts and omissions alleged herein constitute negligence or gross negligence on the part of the Defendants.

57. The acts and omissions alleged herein have caused and continue to cause Plaintiff much unnecessary pain, suffering, and injury, including permanent injury.

58. The acts and omissions alleged herein have reduced Plaintiff's earning capacity and future quality of life. Much and perhaps all of this damage is permanent.

WHEREFORE, Plaintiff prays compensatory damages of $10,000,000.00; for costs of the action; and for such other and further relief as may be appropriate whether or not specifically prayed.

## VERIFICATION

Plaintiff by his signature below declares under penalty of perjury pursuant to 28 USC 1746 that the foregoing facts are true and correct.

By: _/s/ Rafael Daniel De la Cruz_          June 16, 2022
Rafael Daniel de la Cruz, BOP #56269-004     Date
FCI Oakdale-1
PO Box 5000
Oakdale, LA 71463-5000

## CERTIFICATE OF SERVICE – PRISON MAILBOX RULE

Plaintiff Rafael Daniel de la Cruz Jimenez hereby certifies that on the date stated above he placed this document in the prison outgoing mail receptacle, addressed to the Clerk of the Court for filing on the CM/ECF system, which will cause all persons entitled to service to receive same. Plaintiff claims the benefits of the prison mailbox rule.

9