IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| RAFAEL JIMENEZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:21CV04053 |
| | § § | |
| UNITED STATES OF AMERICA, | § § | |
| Defendant. | § § § § | |

## DECLARATION OF ZACH BURNS

In accordance with the provisions of section 1746 of title 28, United States Code, I, the undersigned, Zach Burns, hereby make the following unsworn declaration, under penalty of perjury, pertinent to the above-styled and numbered cause:

1. I have been employed by the United States Department of Justice, Federal Bureau of Prisons (BOP) since January 2013. I have held the position of Paralegal Specialist with the BOP from January 2017 to the present. As part of my duties, I have access to the administrative tort claim tracking system for the BOP.

2. I make this declaration in concerning to the lawsuit filed by Rafael Jimenez, federal register Number 56269-004. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. I am familiar with the BOP computer database, known as Content Manager. Contained within that database system is the Administrative Tort Application, which holds agency administrative tort claim information, including filing history, status tracking, and agency response information.

3. It is my understanding inmate Jimenez has filed the above-titled action claiming violations of his rights while assigned to the Federal Correctional Institution in Oakdale, Louisiana as a result of medical care he received at Oakdale.

4. I have reviewed inmate Jimenez's administrative tort history throughout his incarceration with the BOP, and the following is a summary of his filings relevant to this matter. (Attachment 1, true and correct copy of the Administrative Tort Application for search of Rafael Jimenez). Of his two administrative tort filings throughout his incarceration in the BOP, one was related to medical care at Oakdale. Id.; Attachment 2, true and correct copy SF-95 of Rafael Jimenez date stamped July 17, 2017). He sought $10,000,000.00 in damages with that claim. (Attachment 2). TRT-SCR-2017-05564 was accepted by the agency, and following receipt of supplemental information from the claimant on November 3, 2017, the BOP notified Jimenez a response

GOVERNMENT EXHIBIT A

*Burns Declaration*
*Jimenez v. USA*

should be issued by May 2, 2018. (Attachment 3, true and correct copy of acknowledgment letter of TRT-SCR-05564). On March 30, 2018, a response denying the claim was issued to Jimenez and sent via United States Postal Service via certified mail. (Attachment 4, true and correct copy of denial letter). In the denial letter, Jimenez was informed he should bring suit on or before six months from the date of that letter if he was dissatisfied with the decision. (Id.). That final agency decision resulted in closure of the administrative tort claim.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of August, 2022

_____
Zach Burns
Paralegal Specialist
Consolidated Legal Center
Houston, Texas

# Attachment 1



# Attachment 2

T-H                                                                8-A

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

**1. Submit to Appropriate Federal Agency:**
J. A. Keller
DOJ-FBOP Regional Director
344 Marine Forces Drive
Grand Prairie, TX 75051

**2. Name, address of claimant, and claimant's personal representative if any.** (See instructions on reverse). Number, Street, City, State and Zip code.
Rafael Daniel De la Cruz Jimenez
Oakdale FCI - 1   Reg. No. 56269-004
P.O. Box 5000
Oakdale, LA 71463-5000

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | [redacted] | Single | See Attached | See Attached |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

RECEIVED JUL 17 2017 BUREAU OF PRISONS LEGAL DEPARTMENT SCRO

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Attached

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Attached | |

**12. AMOUNT OF CLAIM (In dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | $10,000,000.00 | | $10,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Rafael Daniel De la Cruz Jimenez | N/A (Prisoner) | 7-13-17 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

**15.** Do you carry accident insurance? ☐ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

**16.** Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   **17.** If deductible, state amount.

N/A

**18.** If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

**19.** Do you carry public liability and property damage insurance? ☐ Yes  If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in Item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: OAK-E-B

---

FROM: 10579062
TO:
SUBJECT: SF95_DeLaCruzDaniel
DATE: 07/12/2017 06:19:40 PM

ATTACHMENT TO STANDARD FORM 95 TORT CLAIM OF RAFAEL DANIEL DE LA CRUZ-JIMENEZ 56269-004

All claims herein are brought on the theory of negligence as well as any other appropriate theory reasonably discernable from the facts stated.

PARAGRAPH EIGHT.  Basis of claim:

   1)   Claimant became ill sometime about early to mid March, 2017.  Claimant began going to Oakdale-1 sick call, and went to sick call many times, estimated to be between 10 and 15 times.  Medical records should show the dates and times and complaints.  Claimant was suffering vomiting, headache, nausea, constipation, and increasing difficulty to even walk.

Claimant was diagnosed with depression by Dr. Alexandre (with Ms. Thomas) and prescribed pills.  Medical personnel tried to coerce Claimant into admitting that his problem was depression, but Claimant refused.  Claimant was sent to the head psychologist on the compound, Ms. Morehart, whose secretary interviewed Claimant and wrote a prescription for depression medication.

As of 4-17-17 Claimant began to write cop-outs, because he was so ill that he could scarcely even get to sick call on his own. Claimant could get off his bunk and walk only with great effort.  Between 4-17-17 and 5-10-17, Claimant had only one tiny bowel movement.  Claimant simply couldn't defecate, and his body began substituting vomiting, as a means of expelling wastes.

Claimant repeatedly pleaded for a wheelchair, so he could travel the substantial distance (about 480 of the short steps Claimant could make, roughly 1,000 feet) to the chow hall, to medical, etc.  All these pleas fell on deaf ears.  The DOJ-FBOP personnel at Oakdale-1 are notorious for denying disabled inmates (whether short or long term) of paid assistants, despite the fact that quality paid inmate assistants could be procured for $69 per month or even less.  Disabled inmates are forced to either beg for "free" assistance from charitable fellow inmates, or pay other inmates to help, despite legal authorities that provide for full employment for inmates who desire jobs.

On or about 4-19-17, Claimant passed out in the chow hall, and had to be half carried, half drug out of the chow hall, put on a cart, and taken to medical.  Claimant was taken to a hospital and examined for constipation only - one symptom only, of all those symptoms set forth above, which were afflicting Claimant.  Claimant's condition continued to deteriorate.

On 5-10-17 Claimant was taken to Oakdale-1 Medical for an examination by staff, including Psychological staff, because medical personnel still couldn't bring themselves to admit that Claimant actually had a severe physical problem.  After the evaluation (including x-rays) Claimant was taken to Oakdale Community Hospital in Oakdale, LA, where an MRI disclosed a tumor at the base of Claimant's brain.

Claimant was then moved to Rapides Regional Medical Center, where the tumor was removed on 5-12-17.  Claimant then went to Intensive Care Unit (ICU) for 2 days, then to a patient room for 2 days.  Claimant had a decent bed and pillow, suitable for recovery from surgery.  Claimant's room had a window, which the guards closed off on claims of "security."

Claimant was sent back to recuperate in SHU (Special Housing Unit, or jail for the prison).  This is the equivalent of taking a person in the free world straight from major surgery in the hospital to the local jail, to solitary confinement, in a facility that makes a complete and utter mockery of the standards of the American Correctional Association (ACA) and other accrediting authorities.

Oakdale-1 denied Claimant a ladder to hold to in order to maneuver in and out of bed.  Oakdale-1 denied Claimant translucent windows, a decent bed and pillow, etc.  In short, Oakdale-1 did what it could to make Claimant miserable, in flagrant disregard of the Standards and Expected Practices of the ACA.  Claimant hereby incorporates Docket #27 of Stilley v. US et al, EDAR 2:15-cv-163 BSM/BD, (available on PACER) as if attached hereto and set forth word for word.  Oakdale-1 is grossly negligent in failing to comply with the ACA rules and Expected Practices, despite repeated polite offers of help from the inmate population.

Oakdale-1 advertises itself to be accredited by the Joint Commission, with a certificate on the wall, yet the Joint Commission says that Oakdale is NOT accredited by their organization.

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: OAK-E-B

--------------------------------------------------------------------------------

On or about 5-19-17, Claimant began to feel fluid leaking from the surgical incision some time after returning to Oakdale-1 SHU. Claimant told the medical personnel, but was not allowed to go back to the doctor.

Claimant returned to the doctor on May 31, 2017. The doctor was shocked to learn that fluid had been leaking for about 12 days. The doctor explained that spinal fluid was leaking, and that this leakage could have resulted in severe permanent disability. The doctor repaired the damage.

Claimant talked in his sleep due to the medications given for pain. One of the guards became angry and began hurling epithets, saying "fuck you!" over and over. Claimant despite his hazy consciousness tried to explain that he was sick and wasn't talking or disturbing the guard on purpose. The guard nevertheless continued to say "fuck you!" to Claimant. Claimant was terrified and could not sleep for the rest of the night.

On or about 6-5-17 Plaintiff was taken from the hospital to Oakdale-1 SHU. Claimant was placed in a regular SHU cell, the same sort of cell which an inmate would occupy as punishment for violating prison rules. Claimant was forced to sleep on a highly unsuitable mat, without a pillow reasonably suited for recovery from surgery. Claimant was denied the assistance normally provided by other inmates with charitable impulses. Claimant remained in SHU until 6-19-17, whereupon Claimant returned to the compound.

Other federal prisons have medical rooms with real beds and real pillows and windows that allow the inmate to look outside the room. There is no logical reason that Oakdale-1 could not do the same, if a decision was made to prepare, maintain, and use such a room.

PARAGRAPH TEN. State nature of extent of injury that forms the basis for the claim:

   1) Claimant was utterly miserable and could not defecate for about 35-40 days. During this same period of time Claimant suffered extreme pain, and could get around only with extreme and increasing difficulty.

Claimant lost weight, from a starting weight of about 174 pounds down to 139 pounds before he had to quit eating to prepare for surgery. The cessation of eating preparatory for surgery only reduced Claimant's weight by about 3 additional pounds, down to 136.

The denial of a wheelchair forced Claimant to allow other inmates to get on each side of him, in order to keep him from falling. This was humiliating, debilitating, and painful, since the other inmates had to exert substantial force to keep Claimant from falling down. Many DOJ-FBOP personnel observed the Claimant wobbling his way back and forth to chow hall and to Health Services, yet nobody intervened to see that Claimant was provided with a wheelchair and an inmate assistant.

Claimant suffered unnecessary physical pain and mental anguish from the time that his initial visits to medical were brushed off and treated as if they were mere psychological weaknesses, up through and including the time that he was finally discharged back onto the compound June 19, 2017. Had Claimant received competent medical evaluation, diagnosis, and treatment, Claimant could have gotten treatment by a competent surgeon, with a reasonable place to recuperate, which would have taken a relatively short period of time.

Claimant's recuperation time was made miserable, and lengthened, by denying Claimant a reasonable bed, in a reasonable room, maintained in compliance with all the Standards and Expected Practices of the ACA. Claimant's window with transparent glass had a piece of cover glass over it, that lets in a small amount of diffuse light, but through which one cannot see anything. The failure to maintain proper rooms, in full compliance with the ACA, for convalescence and recovery from surgery or other procedures amounts to negligence or gross negligence or worse. Such neglect and failure in this case caused Claimant serious suffering, damage, and harm both physical and psychological.

Claimant suffered the loss of spinal fluid for about 12 days, between the time that he reported it and the time he finally got appropriate care. This amounts to negligence, gross negligence, or worse, which increased the total time of convalescence, loss of function, loss of the normal pleasure of living, etc.

After the surgery, all the symptoms set forth above promptly disappeared, with the following provisos. Claimant is now left with a spot on his left eye, which started about the time Claimant was no longer able to walk unassisted, about 3 days prior to the surgery. In addition, Claimant now shakes, has difficulty remembering things that were previously easy to remember, and does not have the fine motor skills that he had before.

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: OAK-E-B

----------------------------------------------------------------------------------------

As a result of the shakes, loss of fine motor skills, damage to memory abilities, and other damage to brain and nerve tissue, etc., occasioned by the undue delay in treatment, Claimant is disabled from performing many activities which he formerly performed. For example, Claimant was a licensed pilot. Due to the damage set forth in this paragraph, Claimant is not qualified to be a licensed pilot. Only time will tell if this injury will heal up, to the point that Claimant can enjoy such activities as flying airplanes. The damage to Claimant's ability to function at a high level, sufficient to be a licensed pilot, and do other high skill activities, is the result of delay. Claimant reported the problem timely, before the symptoms became extreme, and could have had the full restoration of function at a high level, if he had received TIMELY evaluation, diagnosis, and treatment by competent medical providers.

Claimant has also suffered psychological injury as a result of coming to know, experientially, that Oakdale-1 will deny an inmate appropriate medical care until the inmate quite simply loses consciousness. Plaintiff continues to suffer psychologically from the knowledge that his medical care is totally within the control of an organization that shamelessly turns its head from the most horrific illnesses, injuries, diseases, and medical conditions.

PARAGRAPH ELEVEN. Witnesses: Medical and scheduling personnel of any level of the DOJ-FBOP having knowledge of relevant facts, including but not limited to backlogs, failure to provide logistical support for medical trips, etc; inmates in Claimant's housing unit who had to help Claimant get around.

)
)
By: _[signature]_                                    7-13-17
Rafael Daniel De La Cruz-Jimenez          Date

## MEDICAL RECORD RELEASE AUTHORIZATION AND FOIA REQUEST IN FAVOR

OF DOJ-FBOP and: _____

The SF 95 Tort Claim requests that the claimant provide certain information including physician reports, itemized medical bills, etc. By my signature on the Certificate of Identity below, I authorize any custodian of my medical records, medical bills, etc., to release same to the agency set forth above, on condition that I also receive a copy. Pursuant to the Freedom of Information Act (FOIA), I request that the said agency supply me with all medical or dental records or bills, etc., relation to me, in the possession of the said agency, or obtained, form any source, during the consideration of the instant SF 95 Tort Claim. I request that the said agency waive any fees because these are my medical records, (broadly construing the term) and because they may be necessary for the evaluation, negotiation, and settlement of my claim. Any custodian of records is entitled to presume the good faith of the said agency, and assume that I will be provided a set of said records reasonably contemporaneously with their receipt, and will be held harmless for operation under that assumption. I will provide signed releases and further assurances as necessary, upon request to me at the address set forth above, in paragraph 2 of the SF 95 Tort Claim. Pursuant to the FOIA, I also request:

_____

IMPROVISED CERTIFICATE OF IDENTITY (Form DOJ-361; OMB# 1103-0016)

Full NAME and CURRENT ADDRESS of Requester, see paragraph 2 above. For DATE OF BIRTH, see paragraph 4.

Citizenship Status: Dominican

Social Security Number: None    Place of Birth: Santo Domingo

Signature: Rafael Daniel Dela Cruz Jimenez    Printed Name: Rafael Daniel Dela Cruz Jimenez    Date: 7-13-17

Absent substantial controversy as to authenticity, a copy of this signature shall be deemed equivalent to an original.

OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person. Furthermore, pursuant to 5 USC §52a(b), I authorize the US Department of Justice to release any and all information relating to me to:

Email: Yaritza hotmail.com
Tel: [redacted] Cell

Yaritza Dela Cruz, 3 Hancock Street, Lawrence, MA 01841

PRINT OR TYPE NAME, ADDRESS, OTHER RELEVANT CONTACT INFORMATION OR AUTHORIZED RECIPIENT (IF ANY)

SHREVEPORT LA 710

14 JUL 2017 PM 3

Rafael Daniel Dela Cruz Jimenez
Register No. 56269-004, V-L
Federal Correctional Institution
P.O. Box 5000
Oakdale LA 71463

Legal Mail *
Date Out: 7/13/17

D J Harmon
Acting Regional Director
344 Marine Forces DR
Grand Prairie, TX 75051
United States

75051-241244

# Attachment 3



**U.S. Department of Justice**

**Federal Bureau of Prisons**

**South Central Regional Office**

*U.S. Armed Forces Reserve Complex*
*344 Marine Forces Drive*
*Grand Prairie, TX   75051*

NOV 0 9 2017

Rafael de la Cruz-Jimenez
Reg. No. 56269-004
Federal Correctional Institution
Post Office Box 5000
Oakdale, Louisiana 71463

Re:  Administrative Tort Claim - TRT-SCR-2017-05564

Mr. de la Cruz-Jimenez:

This acknowledges our receipt of your supplement pertaining to the above mentioned claim.  The correspondence was received by the Federal Bureau of Prisons for processing on November 3, 2017.

Claims processed pursuant to the Federal Tort Claims Act are allowed an additional six months to consider supplemental information submitted.  Accordingly, you may expect a response from this office on or before May 2, 2018.

Sincerely,

Jason A. Sickler
Regional Counsel

JAS/bkv

# Attachment 4



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

U.S. Armed Forces Reserve Complex
344 Marine Forces Drive
Grand Prairie, Texas 75051

CERTIFIED MAIL # 7001 0320 0000 9018 3101
MAILED: MAR 3 0 2018

Mr. De La Cruz Jimenez, Rafael
Reg. No. 56269-004
FCI Oakdale I
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463

Re:  Administrative Tort Claim No. TRT-SCR-2017-05564

Mr. De La Cruz Jimenez:

Your claim has been considered for administrative settlement under the Federal Tort Claims Act, Title 28 U.S.C. § 2672 et seq., and authority granted by 28 C.F.R. § 0.172. You claim government liability in the amount of $10,000,000.00 for personal injury.

Section 2672 of the Federal Tort Claims Act delegates to each federal agency the authority to consider, determine, and settle any claim for money damages against the United States for loss of personal property or injury caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment.

You claim that in "mid March" of 2017, while incarcerated at FCI Oakdale I, you began experiencing headaches, nausea, constipation, and difficulty walking. You allege that when you notified Health Services of your symptoms, they initially diagnosed you with depression. However, your symptoms allegedly continued to worsen and, upon a subsequent evaluation by Health Services, it was recommended that you go to an outside hospital for an MRI, whereupon it was discovered that you had a brain tumor. You state that the tumor was successfully removed and after returning to FCI Oakdale you were placed in the Special Housing Unit, which you assert lacked the necessary amenities to adequately accommodate your recovery. You state that "after surgery all the symptoms set forth above promptly disappeared." However, you allege that as a result of the delay in treatment and because of the inadequate conditions of your confinement while in SHU, you now experience shakes, loss of fine motor skills, memory loss, psychological pain, and compromised vision in the form of a spot in your left eye.

De La Cruz Jimenez, Rafael; Reg. No. 56269-004
TRT-SCR-2017-05564
Page 2

An investigation of your claim revealed on March 7, 2017, you were evaluated by Health Services at sick call and you complained that you were experiencing headaches and mild dizziness when turning your head. Health Services documented your symptoms and recommended that you continue to report to sick call. You were also prescribed OTC analgesics as needed and an optometry examination was scheduled for April 2017. On March 20, 2017, you were seen by an MLP who ordered an electrocardiogram. On April 3, 2017, you attended sick call and reported dizziness and headaches. Health Services prescribed Meclizine and Effexor for these symptoms, respectively. On April 11, 2017, you again reported to sick call complaining about headaches; you also reported experiencing vomiting and gastrointestinal problems but denied having constipation. Medication was prescribed and laboratory tests were ordered.

Between April 12, 2017 and April 20, 2017, you attended sick call at Health Services four more times, with complaints of headaches and gastrointestinal distress. Over the course of these sick call visits, Health Services continued to prescribe medication for your headaches and gastrointestinal complaints while they worked to determine the cause of your symptoms. Health services also referred you to be evaluated by a physician for non-resolving headaches (April 12, 2017), ordered x-rays for your abdomen (April 17, 2017), and prescribed intravenous fluids and ordered another round of lab tests (April 19, 2017). On April 26, 2017, you were evaluated by an MLP after allegedly losing consciousness in Food Services and sent to an outside hospital. Upon your return on the following day, you were seen by an MLP; the only complaint you made during this visit was for constipation, which the MLP treated with a prescription of Citrate of Magnesia.

On May 1, 2017, you were evaluated by Psychology staff after being referred by Health Services for "repeated somatic complaints." This referral was made because it was determined that your complaints regarding continuing headaches was possibly having a negative effect on your psychological well-being. Thus, your treatment for depression was made independent of any possible physical maladies, and was in no way intended as a treatment for said physical maladies. On May 9, 2017, after complaining of headaches and numbness in your limbs, you were transferred to an outside hospital where you received a CT scan of your head, which revealed a brain mass. Following this discovery you were transferred to Rapides Medical Center, where the mass was removed. On May 15, 2017, you returned to FCI Oakdale and were placed in the Special Housing Unit. The following day, you were evaluated by Health Services and it is documented that you made no complaints of headaches, dizziness or gastrointestinal distress. While in the Special Housing Unit, Health Services records show that you experienced a fluid leaking from the surgical incision on your head. On May 31, 2017, you were transferred to a local hospital and treated for leaking of cerebrospinal fluid (CSF), after which you were returned to SHU at FCI Oakdale.

Health Services records reveal that you continued to receive medical attention via regularly scheduled SHU rounds conducted by Health Services. During these rounds, following your treatment for CSF leakage, you made no complaints of shakes, loss of fine motor skills, memory loss, psychological pain, compromised vision, or any other physical or psychological problems.

De La Cruz Jimenez, Rafael; Reg. No. 56269-004
TRT-SCR-2017-05564
Page 3

Based on these findings, there is no evidence to substantiate that the alleged delay in diagnosing your brain tumor was the result of negligence of Health Services staff or that the alleged delay in treatment necessarily caused the symptoms you claim to be currently experiencing; i.e. shakes, loss of fine motor skills, memory loss, psychological pain, and compromised vision. From your initial report of symptoms on March 7, 2017, you received a continuing level of care while Health Services worked to determine the cause of your physical symptoms. Following successful diagnosis and removal of your brain mass, Health Services records show that you reported no further negative symptoms. Be advised that, pursuant to 28 C.F.R. § 14.4(b), in support of a claim for personal injury, a claimant may be required to provide medical records detailing the nature and extent of injury or "any other evidence or information which may have bearing on either the responsibility of the United States for the personal injury or the damages claimed."

Additionally, you claim that the conditions in SHU were insufficient and that it was cruel to confine you there while you recovered from surgery. Your housing history records indicate that you were placed in SHU on Administrative Detention status; this was done as a non-punitive measure meant to ensure your safety while you recovered. Be advised that, pursuant to Program Statement 5270.08, Inmate Discipline and Special Housing Units, "Administrative detention status is a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of inmates or others, the protection of property, or the security or orderly running of the institution." Furthermore, investigative findings showed that the conditions in SHU at FCI Oakdale were adequate and adherent to Bureau policy, and there is no evidence to substantiate that the conditions in SHU impeded your recovery or had a negative impact on your health. You claim that your treatment for depression on May 1, 2017, was a negligent misdiagnosis of your brain tumor; however, be advised that your recommended treatment for depression was specifically for somatic complaints and was not intended as a treatment for your physical maladies or a substitute for actual medical attention.

Thus, for the aforementioned reasons, there is no evidence to establish that you experienced an injury due to a negligent act or omission of a Federal Bureau of Prisons employee acting within the scope of his or her office or employment, therefore, your claim is denied.

You are advised that if you are dissatisfied with our determination in this matter, you are afforded six (6) months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court.

Sincerely,

Jason A. Sickler
Regional Counsel

cc:  P. Kelly, Warden